CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY, APPELLANT, V. I. T. AMACK, ADMINISTRATOR, APPELLEE.

FILED JULY 18, 1924. No. 24123.

1. Statutes: CONSTRUCTION. In endeavoring to ascertain the meaning of a statute, the court may examine the proceedings attending its passage through the legislature, and the various amendments made thereto.

2. ———: ———: WORKMEN'S COMPENSATION LAW. The workmen's compensation law, subdivision 2, sec. 3029, Comp. St. 1922, is as follows: "Railroad companies engaged in interstate or foreign commerce are declared subject to the powers of congress and not within the provisions of this act." Held, that such language

is plain, clear, and not subject to construction or interpretation, that the court has no power to amend the statute, and that an employee of such a railroad is not within the provisions of the law.

APPEAL from the district court for Webster county: LEWIS H. BLACKLEDGE, JUDGE. *Reversed and dismissed.*

*Byron Clark, Jesse L. Root* and *Paul E. Boslaugh,* for appellant.

*F. J. Munday, contra.*

Heard before MORRISSEY, C. J., LETTON, ROSE, DEAN, GOOD and THOMPSON, JJ., and REDICK, District Judge.

PER CURIAM.

William S. Bruner, while employed by the appellant as a member of a bridge gang, was killed by a train. Claim was made for compensation under the workmen's compensation act. An allowance was made by the labor comissioner. The railroad company appealed to the district court, and from an adverse decision there has brought this appeal.

The question at issue is a narrow one. Bruner was working with a bridge gang, constructing a concrete culvert under a wooden trestle upon the main line of the Chicago, Burlington & Quincy Railroad between Kansas City, Missouri, and Denver, Colorado. It is the contention of the defendant that the provision in subdivision 2, sec. 3029, Comp. St. 1922, "Railroad companies engaged in interstate or foreign commerce are declared subject to the powers of congress and not within the provisions of this act," applies, and that hence there can be no award. The appellee rests his case upon the proposition that the work in which deceased was engaged was not connected with interstate commerce, that it was new work having no direct relation to such commerce and therefore that his employment fell within the provisions of the compensation act. Granting that deceased was not engaged in interstate commerce, is such an employee or his dependents entitled to compensation under

the law? Section 3029, Comp. St. 1922, is a general stat-
ute. The first subdivision provides: "The provisions of
this act shall apply to the state of Nebraska and every gov-
ernmental agency created by it, and to every employer in
this state employing one or more employees, in the regu-
lar trade, business, profession or vocation of such employ-
er." The second subdivision is as follows: "The following
are declared not to be hazardous occupations and not within
the provisions of this act: Employers of household domes-
tic servants and employers of farm laborers. Railroad
companies engaged in interstate or foreign commerce are
declared subject to the powers of congress and not within
the provisions of this act."

The determination of the question depends upon the in-
tention of the legislature as expressed in this section. The
first subdivision is inclusive in the classification of em-
ployers, and the second subdivision is exclusive. It is ex-
pressly provided that employers of household domestic ser-
vants, employers of farm laborers, and railroad companies
engaged in interstate or foreign commerce are not within
the provisions of this act. Can language be more clear
and positive? The contention of the claimant is that the
statute should be read as if it contained the word "while"
or "when," as follows: "Railroad companies 'while' or
'when' engaged in interstate or foreign commerce are de-
clared subject to the powers of congress and not within the
provisions of this act." Is the court authorized to amend
the act in this manner? The rule is that if the language
of a statute is ambiguous the courts may construe it, but
if the language is plain and unambiguous, to attempt to
give it any other than its plain meaning would be judicial
legislation. The legislators evidently did not have in mind
the contingency that railroads engaged in interstate com-
merce might be employers of labor not connected with such
commerce, and made no provision for such a contingency.
It is argued that the statute must be construed liberally.
This we concede, and this has been the uniform holding of
this court, but a liberal construction cannot supply a delib-
erate omission.

A consideration of the progress of the workmen's compensation act through the legislature confirms this view of the legislative intent. In section 2 of the original bill "engineering works" were included as extra hazardous, and in a description of such works in section 3 railroads are included. When the act reached the senate it was amended so as to provide: "The provisions of this act shall apply to every employer in this state enumerated in this subdivision of section 6 engaged * * * in the business of carriage by land or water and loading and unloading in connection therewith (except that this act shall not be construed as applying to any railroad or railway company engaged in interstate or foreign commerce, which railroad or railway company by reason of being so engaged is not subject exclusively to the legislative power of the state of Nebraska, and for which railroad or railway company and the employees thereof a rule of liability or method of compensation has been or may be established by the congress of the United States; it being the intent and purpose that this act shall not affect or change the existing statutory liabilities and rights as between railroad or railway companies and their employees with respect to damages or compensation for accidental injuries or death caused by accident arising out of and in the course of employment)." This was amended in the house and the act as finally passed excluded "railroad companies engaged in interstate or foreign commerce." The legislature evidently considered the inclusion of such railroads and definitely rejected the idea. The court is not authorized or empowered to write such rejected matter into the statute, even though the result of the legislation seems unfair and unjust. The Nebraska statute stands almost, if not quite, alone in excluding such railroads as a class. The legislature alone has power to extend relief to this class of workers, and since the facts before us show the necessity of such legislation perhaps it may amend the law.

The judgment of the district court is reversed and the cause dismissed.

REVERSED AND DISMISSED.

Note—See Statutes, 36 Cyc. pp. 1103, 1107, 1138—Constitutional Law, 12 C. J. p. 883, sec. 387—Workmen's Compensation Acts, p. 36, sec. 31.